IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE CURRY, TODD SCHILTZ, ANTHONY THOMPSON, DAVID LENOCI, THOMAS SHERIDAN, TERRY T. GIBSON, MARGARET KEY, FELIX KASKIE, ESTELA DIEHL and ROBERT KMIECIK, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KRAFT FOODS GLOBAL, INC., <br><br> Defendant. | Case No. 10 C 1288 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Christine Curry, Todd Schiltz, Anthony Thompson, David Lenoci, Thomas Sheridan, Terry T. Gibson, Margaret Key, Felix Kaskie, Estela Diehl, and Robert Kmiecik (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, sued Defendant Kraft Foods Global, Inc. ("Kraft") for failure to pay them for time spent donning and doffing protective equipment before and after their work shifts. Plaintiffs claim in Count I that Kraft violated the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), and in Count II the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*, for non-payment of full wages for hours worked during the three years immediately preceding filing of the Complaint. Plaintiffs now move under Federal Rule of Civil Procedure 23 for certification as a class action. For the following reasons, the Court grants Plaintiffs' Motion to Certify the Class.

## BACKGROUND

Plaintiffs are hourly employees at Kraft's Naperville, Illinois facility. (Compl. ¶¶ 4, 5.) In performing their daily duties, Plaintiffs were required to wear certain personal protective equipment,

including but not limited to safety footwear, earplugs, and hard hats. (*Id.* ¶ 5.) It takes some time to put on ("don") and take off ("doff") the protective equipment at the beginning and end of each shift. (*Id.* ¶¶ 5-7.) Plaintiffs claim that Kraft has not counted the donning and doffing as part of their "Work Time," so as a result they never received compensation for this time. (*Id.* ¶ 11.) Because Plaintiffs were not compensated, they and other similarly-situated hourly employees at the Naperville, Illinois facility worked for more than forty hours in a workweek but were not compensated at the increased overtime rate of one-and-a-half times the regular hourly rate as the IMWL requires. (*Id.* ¶¶ 14-16.) Moreover, to the extent that any uncompensated "Work Time" was straight-time hours, rather than overtime, Plaintiffs also claim that Kraft violated the IWPCA. (*Id.* ¶ 14.)

Plaintiffs seek to certify two classes, one for each of the counts in the Complaint. For the IMWL claim in Count I, Plaintiffs' propose the following class definition:

> All hourly and former hourly employees employed at Kraft Foods Global, Inc.'s Plant located in Naperville, Illinois, who in violation of 820 ILCS 105/1, *et seq.* were not paid at their full **Wages** for **Hours Worked** during the **Class Period.**
>
> The **Class Period** is from three years immediately preceding the filing of the complaint to the time of payment of judgment.
>
> Excluded from the class are claims for personal injuries. Also excluded from the class are individuals who opt out of the class.

(R. 46, Mot. for Class Cert. at 1) (emphasis in original). For the IWPCA claim in Count II, Plaintiffs' proposed class definition is the same except for the class period:

> All hourly and former hourly employees employed at Kraft Foods Global, Inc.'s Plant located in Naperville, Illinois, who in violation of 820 ILCS 115/1, *et seq.* were not paid at their full **Wages** for **Hours Worked** during the **Class Period.**

2

> The **Class Period** is from five years immediately preceding the filing of the complaint to the time of payment of judgment.
>
> Excluded from the class are claims for personal injuries. Also excluded from the class are individuals who opt out of the class.

(*Id.* at 2.) (emphasis in original).

## STANDARD OF REVIEW

The Court has "broad discretion" to determine whether certifying a class is proper under Rule 23. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). In making this analysis, the Court takes the substantive allegations in the Complaint as true and usually does not examine the ultimate merits of the case. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981). Plaintiffs bear the burden of demonstrating that their case meets all of the requirements of Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (Plaintiffs must "affirmatively demonstrate" compliance with Rule 23); *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000).

Plaintiffs must first show that the putative class satisfies the four threshold requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). If Plaintiffs meet this initial burden, they must then show that the requirements for one of the subsections of Rule 23(b) are met. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Here, the Plaintiffs seek certification under either Rule 23(b)(2) or Rule 23(b)(3). Under Rule 23(b)(2), Plaintiffs must request injunctive or declaratory relief based on Kraft's actions that apply to the whole class. Rule 23(b)(3), though, mandates that Plaintiffs establish that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members [predominance] and that a class action is superior to other

available methods for fair and efficient adjudication of the controversy [superiority]." Fed. R. Civ. P. 23(b)(3). In addition to the Rule 23 requirements, the party seeking class certification must also provide a workable class definition by showing that the members of the class are identifiable. *See Oshana*, 472 F.3d at 513.

## DISCUSSION

**I.     Rule 23(a)**

The Plaintiffs contend that class certification is appropriate because they can satisfy the four threshold requirements of Rule 23(a). Here, Kraft does not dispute the numerosity requirement, nor the commonality one. (R. 56, Resp. to Memo. for Class Cert. at 19-25.) The Court must therefore address the typicality and adequacy of representation requirements.

**A.     23(a)(3) Typicality Requirement**

Rule 23(a)(3) requires that the claims of the Plaintiffs and the claims of the class as a whole must be "typical." Fed. R. Civ. P. 23(a)(3). Plaintiffs need not establish that all claims are identical, but rather the inquiry turns on whether "the named representatives' claims have the same *essential characteristics* as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (emphasis added). This boils down to two considerations: whether the same event, practice, or course of conduct gives rise to the claims of the class and whether the claims are grounded in the same legal theory. *Id.*; *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008); *see also Oshana*, 472 F.3d at 514. Factual distinctions among the different class members does not prevent Plaintiffs from meeting the typicality requirement so long as a similar legal theory binds the named Plaintiffs and the other class members. *De La Fuente*, 713 F.2d at 232

4

("[S]imilarity of legal theory may control even in the face of differences of fact."); *Arreola*, 546 F.3d at 798.

Here, Kraft's time card policy required all employees of the Naperville facility to punch in and out when they were fully dressed in their work clothes; employees are not entitled to compensation for time spent donning and doffing protective gear before and after the shifts. (R. 49, Memo. Class Cert., Ex. D.) Plaintiffs claim that this policy violates the IMWL and IWPCA. Specifically, the nature of Plaintiffs' claims, and the basis for moving for class certification, rests upon application of this policy to all Kraft employees at the Naperville facility. The relief sought for the entire class stems from a same practice or conduct—denying compensation for donning and doffing—and a consistent legal theory—violation of the IMWL and IWPCA. *See, e.g., Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 440-41 (W.D. Wisc. 2008) (in nearly identical case resulting from Kraft's Madison facility failing to compensate for donning and doffing, there was typicality because plaintiffs were challenging the "uniform policy" of refusing to pay for time spent donning and doffing). Because the named Plaintiffs challenge the legality of Kraft's prohibition on compensation for donning and doffing, and this would be the exact same claim of any potential class members, the typicality requirement is met. *See, e.g., Arreola*, 546 F.3d at 798-99 (typicality where plaintiff challenged jail's general policy of not providing crutches to inmates in certain areas); *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (typicality where plaintiff and others in the class all received debt collection letters that allegedly violated the Fair Debt Collection Practices Act). Further, numerous other courts have found class certification appropriate for employees seeking unpaid compensation for donning and doffing equipment before and after a work shift. *See Spoerle*, 253 F.R.D. at 440-41 (collecting cases).

5

Kraft's arguments against typicality essentially attempt to factually distinguish the characteristics of the individual class members. Specifically, Kraft maintains differences in each employee's hours and pay, as well as other variables such as Kraft's changes in the kind of protective gear each employee must wear, are sufficient enough to warrant an "individualized analysis" of each employee. But if the named Plaintiffs and the potential class members are united by a common legal theory, which they are, factual differences among them do not disrupt a finding of typicality. *De La Fuente*, 713 F.2d at 232; *Arreola*, 546 F.3d at 798. While each of the class members would have a unique claim for damages, this does not affect the typicality analysis. *See, e.g., Hernandez v. United Fire Ins. Co.*, 79 F.R.D. 419, 425 (N.D. Ill. 1978) ("Clearly, differences in the amount of damages sought do not destroy typicality."). As such, Plaintiffs have met the typicality requirement.

**B.     23(a)(4) Adequacy of Representation Requirement**

The remaining requirement under Rule 23(a) requires that the interests of the class be fairly and adequately protected by the class representative. Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) is "not [a] difficult" standard to meet. *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007). The adequacy analysis has two dimensions: (1) adequacy of Plaintiffs' counsel; and (2) adequacy of the named Plaintiffs to protect the interests of the entire class. *See Retired Chi. Police Ass'n v. City of Chi.* 7 F.3d 584, 598 (7th Cir. 1993); *see also Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

First, Kraft does little to question the experience and qualifications of Plaintiffs' counsel to vigorously and competently litigate the case. The firm resume and the individual resumes of Plaintiffs' counsel establishes their experience, competence, and qualifications. They have acted as

6

counsel in several class action lawsuits, including class action lawsuits in this state. (R. 49, Memo. Class Cert., Ex. I-J.) They were also involved in a nearly identical class action lawsuit against Kraft for its donning and doffing policy at its Madison, Wisconsin facility, which the parties litigated up to the Seventh Circuit. Plaintiffs' counsel can therefore sufficiently represent the interests of all of the class members.

This leaves the issue of whether the named Plaintiffs adequately represent the class. This depends on whether the named Plaintiffs: (1) have any conflicts with the claims of the potential class members; and (2) have a sufficient stake in the outcome of the litigation so that the Court is confident that they will zealously advocate on behalf of the class. *Retired Chi. Police Ass'n.*, 7 F.3d at 598; *Fitzsimmons*, 805 F.2d at 697; *see also Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 (N.D. Ill. 2010).

Kraft challenges the adequacy of the named Plaintiffs to represent the class on several fronts. First, it argues that Plaintiffs lack the credibility to lead the class, given that some of them purchased drugs on Kraft's property, lied on job applications, or were disciplined for using violence at work. (R. 56, Resp. to Memo. for Class Cert. at 19-25.) "For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exist admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011) (quoting *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990)). While legitimate concerns about the credibility of a class representative can undermine class certification, petty credibility challenges do not. *CE Design Ltd.*, 637 F.3d at 728. Typically where courts have denied class certification they have done so because the class

7

representative generally lacked credibility (i.e., criminal conviction for a crime of dishonesty) or the class representative's credibility was severely strained with respect to the claims in the lawsuit. *See, e.g., Schleicher v. Wendt*, No. 02-cv-1332, 2009 WL 761157, at *3 (S.D. Ind. March 20, 2009) (class representative who was convicted of criminal fraud was unfit to serve as fiduciary for class that was asserting that they were victims of a fraudulent scheme); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990) (Rovner, J.) (false testimony during deposition warranted decertification of the class). Here, Kraft only challenges the credibility of three of the class representatives. All of the allegations, however, relate to personal shortcomings not directly indicative of honesty, and they do not indicate dishonest conduct in this litigation. *See, e.g., Gooch v. Life Investors Ins. Co. of Am.*, 264 F.R.D. 340, 349 (M.D. Tenn. 2009) (credibility analysis is not an "examination into [the representatives'] moral righteousness" but instead relates to any "improper or questionable conduct arising out of or touching up on the very prosecution of the lawsuit"); *Phipps v. Sheriff of Cook County*, 249 F.R.D. 298, 301 (N.D. Ill. 2008) (Bucklo, J.) (prior drug conviction did not make plaintiff inadequate class representative). These kind of allegations do not put Plaintiffs in conflict with any of the potential class members.[1]

Kraft also argues that the Plaintiffs do not adequately represent the class because they are not sufficiently involved in the litigation process. (R. 56, Resp. to Memo. for Class Cert. at 23-25.)

---

[1] Kraft also asserts that Plaintiffs lack credibility because they lied in their depositions. On a declaration each Plaintiff stated that "I was not paid for time spent putting on and the time removing the personal protective equipment, and other articles as required under Kraft's Good Manufacturing Processes Policies that were required for work at Kraft"; but some of the Plaintiffs then stated in their depositions that, on a few occasions, they had changed before clocking out (and therefore were paid for the time it took them to change). (R. 56, Resp. to Memo. Cert. Class at 22.) This argument, however, does not subvert the Plaintiffs' credibility, especially in light of the fact that this lawsuit stems from Kraft's blanket refusal to pay employees for any time spend donning and doffing.

8

Specifically, Kraft alleges that the named Plaintiffs were not involved in the preparation of the Complaint, are unaware of their duties as class representatives, and have spent little time preparing for litigation. (*Id.*) The Plaintiffs need only possess a simple understanding of the nature of the proceedings and the basis of the claims. *See Culver v. City of Milwaukee,* 277 F.3d 908, 913 (7th Cir.2002) ("Experience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions."); *Randle v. GC Serv., L.P.*, 181 F.R.D. 602, 604 (N.D. Ill. 1998) ("[A]s long as a class representative's interests do not conflict with those of the proposed class, she need only have a marginal familiarity with the facts of her case and need not understand the larger legal theories upon which her case is based."). The Plaintiffs satisfy this low bar, especially given their participation in depositions and submission of declarations. Plus, there is no evidence that the interests of the named Plaintiffs are in conflict with the interests of any potential class member. In sum, the Court sees no reason to question the named Plaintiffs' dedication to zealous advocacy on behalf of the class of the class as a whole, nor is there any basis to question the competence of class counsel.

Plaintiffs have therefore satisfied all four of the requirements of Rule 23(a).

**II.     Rule 23(b)(3)**

Turning to the second step in the analysis, Plaintiffs claim that they meet Rule 23(b)(3)'s requirement "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (plaintiff must satisfy at least one of the Rule 23(b) subsections). Class actions brought under Rule 23(b)(3) are those that would

9

"achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prod., Inc., v. Windsor*, 521 U.S. 591, 614 (1997).

### A. Predominance

While this Court found the commonality requirement was met because of the common legal theory linking the class, Rule 23(b)(3)'s "predominance criterion is far more demanding." *See Amchem Prod., Inc.*, 521 U.S. at 623-24. It tests whether a proposed class is "sufficiently cohesive" to warrant class adjudication. *See id.* at 623. To satisfy this inquiry, Plaintiffs must show not only that common issues exist, but also that they outweigh any questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3); *Ross v. RBS Citizens, N.A.*, 09 C 5695, 2010 WL 3980113, at *6 (N.D. Ill. Oct. 8, 2010) (Lefkow, J.).

The predominance inquiry begins with an examination of the substantive elements of the class claims and defenses. *See Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981); *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 303 (N.D. Ill. 2010) (Plaintiffs must show "that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members"). There is no bright line test for predominance: on the one side, the existence of individual issues will not automatically defeat certification; but on the other, a class action will not serve its intended purpose if it degenerates into separate trials on almost all elements of all the class claims. *Simer*, 661 F.2d at 672. In between these guideposts, the Court must exercise sound discretion to determine whether issues common to the class predominate over issues individual to each class member. *See Retired Chi. Police Ass'n*, 7 F.3d at 596.

Plaintiffs seek damages for each class member based on Kraft's violation of the IMWL and IWPCA. An IMWL claim exists if Plaintiffs can show that: (1) members of the proposed class performed work before and after their shift; (2) Kraft required or permitted that work to be performed; (3) the class members worked for more than forty hours during the week that they performed the alleged work before and after their shift; and (4) they were not paid at one-and-a-half times their regular hourly rate for that overtime work. *See* 820 ILCS 105/4a(1). A claim under the IWPCA requires that Plaintiffs prove: (1) members of the proposed class performed work before and after their shifts; (2) Kraft required or permitted that work to be performed; (3) the class members were not paid for that work. *See* 820 ILCS 115/3.

Here, the common evidence required to prove liability on both counts exceeds the details unique to each individual class member. The uniting thread for the IMWL and IWPCA claims is the validity of Kraft's policy that bars employees from receiving compensation for time spent donning and doffing. A legal determination as to whether Plaintiffs are entitled to unpaid compensation for this time will be a driving force in the outcome of the lawsuit. If the donning and doffing time is compensable, then a fact determination equally affecting all the class members will be whether Kraft has paid the employees the amount they are owed. *See, e.g., Musch v. Domtar Indus., Inc.*, 252 F.R.D. 456, 461-62 (W.D. Wis. 2008) (finding predominance where defendant owed plaintiffs compensation as a result of its policy of not compensating for time spent donning and doffing because legal and factual issues applied to the entire class). Kraft, though, asserts that individual analysis is needed because the Plaintiffs had different habits when clocking in and out, and some changed into or out of the protective gear while on the clock. (R. 56, Resp. to Memo. Cert. Class at 10-12.) While these kind of discrepancies may exist among the class members, they do not

outweigh the similarities: that Plaintiffs all were hourly employees of Kraft, they were required to wear protective gear to perform their jobs, and Kraft had an overarching policy that prohibited compensation for time that the class members were at work but were donning and doffing the protective clothes. *See, e.g., Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 956-57 (W.D. Wis. 2008) ("Regardless whether plaintiffs work in different areas, on different shifts and don and doff different amounts of required protective gear, they are subject to defendant's general practice of not compensating employees for donning and doffing certain protective gear and walking to work areas."); *Spoerle*, 253 F.R.D. at 441 (in nearly identical case, finding 23(b)(3) was met and class certification appropriate); *Ross*, 2010 WL 3980113, at *6 (predominance where there was evidence suggesting existence of a company-wide policy to deny overtime pay, even though there were "variations in methods" that the company used to deny overtime).

The thrust of Kraft's argument against predominance, in essence, relates to divergent damages that each of the class members could receive. Differences resulting from some class members periodically doffing their protective gear before clocking out, and variances in the amount of hours worked per week and the specific items that employees had to wear are inquiries relevant to calculating damages; as such, they do not bar class certification under Rule 23(b)(3). *See Arreola*, 546 F.3d at 801; *Kohen v. Pac. Inv. Mgmt. Co.*, 244 F.R.D. 469, 477 (N.D. Ill. 2007); *Ross*, 2010 WL 3980113, at *7.

**B. Superiority**

In addition to predominance, a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, there are a large number of potential class members (200), each with the same claim and each potentially entitled to

a relatively small recovery—at least relative to the costs of individually litigating the case. Deciding each claim separately would be an extremely inefficient use of both judicial and party resources, and many individual class members would otherwise be unlikely to bring their claims. *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). This makes Plaintiffs' claims ideal for resolution as a class action. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir.2006) ("Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate"). Kraft contends that while Plaintiffs seek compensation for "reasonable time" spent donning and doffing, they cannot reach a consensus on exactly what this means. As such, Kraft argues, individualized treatment is appropriate. As discussed, the amount of compensation is a damages issue, and does not stand in the way of class certification. In any event, this is exactly the kind of case that should proceed as a class action. *See, e.g., G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2008 WL 3889950, at *6 (N.D. Ill. Aug. 20, 2008) (Kocoras, J.) (class action superior in part due to consistency of decision and efficiency).

As such, the Plaintiffs satisfy the requirements of Rule 23(b)(3), and the Court need not analyze (b)(2).

## III. Class Period

In their Complaint, in Count II for the IWPCA claim, Plaintiffs assert that the relevant time period for this claim is three years immediately before the filing of the Complaint. (R. 1, Compl. Count II, ¶ 15.) Now, in the Motion to Certify the Class, Plaintiffs seek a class period of "five years immediately preceding the filing of the complaint." (R. 48, Mot. Class Cert. at 2.) The Court finds that the appropriate class period for the IWPCA claim is three years, as Plaintiffs originally asserted

in their Complaint. First, the parties engaged in discovery on the issue of class certification with the three year limitations period in mind. Second, Plaintiffs offer no explanation as to why they never amended the Complaint to reflect this expanded period, nor do they offer argument as to why augmenting the limitations period by two years is necessary. Without any explanation as to why the five year period is now appropriate, the Court rejects Plaintiffs' attempt to enlarge the class period. *See, e.g., In re Wal-Mart Wage and Hour Employment Practices Litigation*, No. 06-CV-225, 2008 WL 3179315, at *6 (D. Nev. June 20, 2008) (denying expansion of class period between complaint and motion for certification because plaintiffs offered no reason why expansion was necessary and never explained why they never amended the complaint to reflect the new class period); *cf. Camilotes v. Resurrection Healthcare*, No. 10 C 366, 2011 WL 1539670, at *3-4 (N.D. Ill. April 21, 2011) (St. Eve, J.) (allowing plaintiffs to amend complaint to expand class period because there was still sufficient class certification discovery time left for defendants to explore the issue). Third, the class period for the IMWL claim is three years, and for the sake of consistency it makes sense to have the period for the IWPCA claim the same because they are closely related claims. Legal argument and additional discovery involve overlap between Counts I and II, so efficiency is gained by confining the class period to three years for both claims.

## CONCLUSION AND ORDER

The Plaintiffs have satisfied all four elements of Federal Rules of Civil Procedure 23(a) and 23(b)(3), as required to achieve class certification. The IMWL class is defined as: All hourly and former hourly employees employed at Kraft's Naperville, Illinois facility who, starting three years before the filing of the Complaint, were not paid their full wages for hours worked (or work time) because they worked in excess of forty (40) hours in an individual workweek but were not

14

compensated for that overtime work at a rate of one-and-a-half times their regular rate of pay. The IWPCA class is defined as: All hourly and former hourly employees employed at Kraft's Naperville, Illinois facility who, starting three years before the filing of the Complaint, were not paid in full for the hours worked (or work time). The Court appoints Plaintiffs' counsel as class counsel under Rule 23(g).

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 12, 2011