IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE CURRY, TODD SCHILTZ, ANTHONY THOMPSON, DAVID LENOCI, THOMAS SHERIDAN, TERRY T. GIBSON, MARGARET KEY, FELIX KASKIE, ESTELA DIEHL, and ROBERT KMIECIK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>KRAFT FOODS GLOBAL, INC.,<br><br>Defendant. | Case No. 10 C 1288<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Christine Curry, Todd Schiltz, Anthony Thompson, David Lenoci, Thomas Sheridan, Terry T. Gibson, Margaret Key, Felix Kaskie, Estela Diehl, and Robert Kmiecik (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, brought this class action suit against Kraft Foods Global, Inc. ("Kraft" or "Defendant") for failing to pay Plaintiffs for time spent donning and doffing protective equipment before and after their work shift. Plaintiffs claim that Kraft violated the Illinois Minimum Wage Act (Count I) and the Illinois Wage Payment and Collection Act (Count II). Plaintiffs move for the Court to remand the case to the Circuit Court of DuPage County because the state wage claims are not preempted by federal law, and therefore this Court does not have federal jurisdiction. For the reasons stated below, the Court denies Plaintiffs' Motion to Remand.

## BACKGROUND

Plaintiffs are employees of Kraft's Naperville, Illinois facility. In performing their duties they are required to wear personal protective equipment. It takes some time to put on and take off the protective equipment at the beginning and end of the day. Plaintiffs claim that Kraft has not counted the donning and doffing as part of their "Work Time." Plaintiffs claim they are entitled to receive payment for this "Work Time" and assert that Kraft is liable under two statutes: the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.* and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.* The issue is whether two federal statutes—section 301 of the Labor Management Relations Act ("LMRA") and section 203(o) of the Fair Labor Standards Act ("FLSA")—preempt these two state law claims. When the Plaintiffs initially filed their Motion to Remand, there was a case pending in the Seventh Circuit, *Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427 (7th Cir. 2010), involving issues similar to those in this case so the Court stayed briefing until the Seventh Circuit decided *Spoerle*.

## STANDARD OF REVIEW

A defendant can remove a case from state court to a federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The party seeking removal has the burden of establishing federal jurisdiction. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005). After a case is removed, but before the court renders a final judgment, if it "appears that the district court lacks subject matter jurisdiction, the case should be remanded" back to state court. 28 U.S.C. § 1447(c). "When ruling on a motion to remand, '[c]ourts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum,' with any doubt resolved in favor of remand." *See, e.g.,*

*Coake v. State Farm Ins. Co.*, 09-cv-353, 2010 WL 2545162, at *3 (N.D. Ind. May 28, 2010) (quoting *Doe v. Allied-Signal Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)).

**DISCUSSION**

Plaintiffs' Motion for Remand claims there is no preemption based on FLSA section 203(o) or LMRA section 301. If neither of these federal statutes preempt Plaintiffs' state law wage and hour claims, there is no basis for federal jurisdiction the Court must remand the case back to the Circuit Court of DuPage Court.

**I.     Fair Labor Standards Act Section 203(o)**

The Plaintiff claims that *Spoerle v. Kraft Foods Global, Inc.*, where the Seventh Circuit recently held that section 203(o) does not preempt Wisconsin wage and hour laws, applies directly to this case. 614 F.3d 427 (7th Cir. 2010). While the general rule is that the FLSA requires employers to pay workers for time spent donning and doffing protective equipment, FLSA section 203(o) allows for management and the union to enter into a collective bargaining agreement ("CBA") that excludes from "Hours Worked" any time spent "changing clothes." *See* 29 U.S.C. § 203(o).

In a preemption analysis, Congress' intent governs but there is the assumption that Congress does not intend to interfere with a state's police power to improve the welfare of its citizens. *Wyeth v. Levine*, 129 S. Ct. 1187, 1994-95 (2009). This assumption is especially strong when Congress passes legislation in an area such as labor law that has historically been occupied by the states. *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008); *see, e.g., Spoerle v. Kraft Foods Global, Inc.*, 626 F. Supp. 2d 913, 919 (W.D. Wisc. 2009). The general purpose of the FLSA is to correct "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health,

efficiency, and general well-being of workers." 29 U.S.C. § 202. Further, section 218(a) of the FLSA shows Congress' intent to leave more charitable state wage and hour laws unaffected by federal statutes: "No provision of this chapter . . . shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chaper." 29 U.S.C. § 218(a). As such, if the state law establishes a higher minimum wage or lower maximum work week than federal law, such a law would facilitate not hinder Congress' goals under the FLSA.

The constitutional basis for federal preemption is the Supremacy Clause, which states, "[T]he Laws of the United States . . .shall be the supreme Law of the Land[.]" U.S. CONST. art. VI, cl. 2. Federal preemption can exist in three forms. First, under express preemption, "Congress clearly declares its intention to preempt state law." *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010). Second, under implied preemption, the "'structure and purpose' of federal law shows Congress's intent to preempt state law." *Id.* Third, under conflict preemption, there is "an actual conflict between state and federal law such that it is impossible for a person to obey both." *Id.*

The Illinois laws at issue here, the IMWL and IWPCA, are wage and hour laws. The IMWL establishes the minimum wage at $8.25 an hour but expressly states that it does not amend or rescind any other state laws that provide more favorable minimum wage or maximum hour standards. *See* 820 ILCS 105/4, 105/13. Likewise, the IMWL does not "in any way diminish the right of employees to bargain collectively with their employers through representatives of their own choosing in order to establish wages or other conditions of work *in excess of the applicable minimum standards of the*

4

*provisions of this Act*. 820 ILCS 105/14 (emphasis added). The IWPCA controls the pay periods for wages, and also allows the parties to collectively bargain the date and arrangements for the payment of wages. 820 ILCS 115/4. The federal counterpart to these state laws is FLSA section 203(o), which allows parties to a CBA to specifically exclude donning and doffing from the amount of hours worked for the purpose of calculating the minimum wage and maximum workweek.

In *Spoerle*, the management and union agreed in a CBA that time spent donning and doffing was not compensable. *Id.* Wisconsin wage and hour law, however, required exactly the opposite – time spent donning and doffing must be compensated at minimum wage or higher. *Id.* The Seventh Circuit held that the CBA created under FLSA section 203(o) did not preempt the Wisconsin state laws. *Id.* at 430. The court reasoned that "[n]othing that labor and management can put into a collective bargaining agreement exempts them from state laws of general application." *Id.* Further, "[m]anagement and labor acting jointly (through a CBA) have no more power to override state substantive law than they have when acting individually." *Id.* State laws that disregard CBAs for failing to comply with state substantive law are valid. *See id.*

While *Spoerle* clearly governs where a conflict exists between the state law and FLSA section 203(o), no such conflict is present between Illinois wage and hour laws and FLSA section 203(o). In *Spoerle*, the terms agreed to under the CBA directly conflicted with Wisconsin law: while Wisconsin law required that donning and doffing count towards hours worked, under section 203(o) the parties agreed in their CBA to exclude donning and doffing time. Illinois wage and hour law, however, does not require the calculation of donning and doffing time like Wisconsin. Further, the CBA between Plaintiffs and Defendant in this case does not explicitly indicate whether donning and doffing time counts toward "hours worked." Finally, section 203(o) and the IMWL and IWPCA

5

provisions allow for CBAs to alter work hour and workweek calculations in excess of minimum state or federal standards. Because *Spoerle* dealt with contrary state and federal provisions (and therefore conflict preemption), and such a conflict does not exist here, the reasoning in *Spoerle* is instructive but the Court cannot mechanically follow the decision as Plaintiffs suggest. For example, while the CBA in *Spoerle* effectively exempted the parties from "state law[] of general application" that required adding donning and doffing time to hours worked, the CBA in this case does not circumvent Illinois wage and hour law.

Moreover, this is not a case of express preemption because section 203(o) contains no express intention to replace state law. In fact, FLSA section 218(a), as noted in *Spoerle*, expressly says the opposite: federal or state laws that establish higher minimum wages or a lower maximum workweek than that set forth in the FLSA are valid. Implied preemption fails to apply for similar reasons. In general, federal labor law "supplement[s] state law where compatible, and supplant[s] it only when it prevents the accomplishment of the purpose of the federal Act." *520 South Michigan Ave. Associates, Ltd. v. Shannon*, 549 F.3d 1119, 1127 (7th Cir. 2008) (quoting *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 756 (1985)). Labor law has historically been left to the states, not the federal government. *See, e.g., Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193 (4th Cir. 2007). There is no Congressional intent to occupy this entire area of law.

In sum, *Spoerle* is distinguishable from this case because Illinois law does not contain a requirement like Wisconsin that requires calculation of donning and doffing time in hours worked. *See, e.g., In re Cargill Meat Solutions Wage and Hour Litigation*, 632 F. Supp. 2d 368, 394 (M.D. Penn. 2008) (more beneficial state law not preempted); *Chavez v. IBP, Inc.*, CV-01-5093, 2005 WL 6304840, at \*36 (E.D. Wash. May 16, 2005) (same*)*. In fact, Illinois wage and hour laws are silent

on the issue. Nevertheless, the end result is the same. Preemption is usually appropriate in cases where, unlike this case, state laws eliminate employee rights that are set forth in CBAs. *See, e.g., Spoerle v. Kraft Foods Global, Inc.*, 626 F. Supp. 2d 913, 921 (W.D. Wis. 2009), *aff'd*, 614 F.3d 427 (7th Cir. 2010); *Livadas v. Bradshaw*, 512 U.S. 107, 118 (1994) (grounds for preemption can exist where state law penalizes use of collective bargaining process). Here, the IMWL/IWPCA and CBA both say nothing about whether donning and doffing counts toward hours worked and under both federal and state law management and unions can enter into CBAs exceeding minimum standards. There is no apparent conflict between the IMWL/IWPCA and section 203(o) and therefore no federal preemption based on FLSA section 203(o).

**II.     LMRA Section 301**

Defendant claims that the IMWL and IWPCA are preempted by LMRA section 301. Under LMRA section 301, federal courts have jurisdiction over disputes that arise out of CBAs. 29 U.S.C. § 185(a). So that CBAs are uniformly applied, section 301 requires the application of federal law to resolve any disagreements as to the CBA's terms. *Id.*; *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988). Section 301 preemption is a case-by-case analysis and will be found where a claim is "founded directly on rights created by collective bargaining agreements," or "substantially dependent on analysis of a CBA." *Atchley v. Heritage Cable Vision Associates*, 101 F.3d 495, 498 (7th Cir. 1996); *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987). In other words, if the dispute centers around interpretation of the CBA's terms, the state law claims are "deemed federal in nature." *Atchley*, 101 F.3d at 499.

Preemption, however, is not automatically granted in "every situation where a collective bargaining agreement comes into play." *Atchley*, 101 F.3d at 499; *Loewen Group Intern., Inc. v.*

7

*Haberichter*, 65 F.3d 1417, 1421. For instance, where the CBA has a minimal effect on the dispute, there is no preemption under section 301:

> [C]ourts in this [Seventh]Circuit . . . have overwhelmingly concluded that, when the resolution of a state wage claim requires more than a mere *pro forma* application of collective bargaining provisions defining hours in a work week, determining applicable rage rates, or delineating the method for calculating overtime pay, preemption is applicable and the state claim is barred.

*See, e.g., Carter v. Tyson Foods, Inc.*, 08-CV-209, 2009 WL 4790761, at *6 (N.D. Ind. Dec. 3, 2009). Similarly, section 301 preemption does not apply to "preempt nonnegotiable rights conferred on individual employees as a matter of state law." *See, e.g., Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 300 (N.D. Ill. 2003) (Levin, M.J.); *see Atchley*, 101 F.3d at 499. The issue driving section 301 preemption is whether Plaintiffs' asserted claims require interpretation of the CBAs.

Here, Plaintiffs claim that failing to compensate them for donning and doffing involves a strict application of Illinois state law, without having to turn to the CBA. The Defendant, however, argues that actions under state wage laws for unpaid wages are preempted by section 301 because resolving the issue requires an in-depth examination of the CBA's terms.

IMWL and IWPCA claims for unpaid time donning and doffing often require application of the wage, overtime, and pay provisions in the CBA, and therefore section 301 preemption is appropriate. *See, e.g., Murray v. Tyson Foods, Inc.*, 08-4001, 2009 WL 322241, at 3 (LMRA section 301 preempted claims under IMWL and IWPCA for unpaid wages for donning and doffing because interpreting CBA required determining what activities constituted "work time" and whether plaintiffs were appropriatel paid); *Carter*, 2009 WL 4790761, at *6 (Section 301 preempted Indiana Wage Statute claim for unpaid wages for donning and doffing because although CBAs did not specifically

8

define "work," "it is a matter of federal contract interpretation to determine whether the words of a collective bargaining agreement created implied rights."); *Gonzalez*, 296 F. Supp. 2d at 936 (Plaintiff's state claims under IMWL and IWPCA for unpaid wages for donning and doffing were created under CBA and therefore preempted by section 301); *Carletto v. Quantum Foods*, 05-3163, 2006 WL 2018250, at *5-6 (Ill. App. Ct. 2006) (Plaintiff's claims under IMWL and IWPCA that defendants failed to properly pay overtime wages for time spend donning and doffing were preempted by section 301 because the court would have to determine whether donning and doffing constitutes "work" under the CBAs). Moreover, another factor supporting preemption is if the CBA provides overtime compensation exceeding that provided in the relevant state laws. *See, e.g., Carletto*, 2006 WL 2018250, at *6 (workers can earn overtime without working forty hours a week); *Anderson v. JCG Indus., Inc.*, 09 C 1733, 2009 WL 3713130, at *4 (N.D. Ill. Nov. 4, 2009) (Lefkow, J.) (CBA allowed double overtime rate on Sundays, whereas state law requires at least time-and-a-half).

Resolving the dispute in this case would require the Court to interpret, not merely reference, the CBA. First, the Court must scrutinize the CBA to decide if "work" as defined in the CBA includes donning and doffing. Both of the CBAs here refer to "work" performed and the rate at which employees will be compensated for this work, but do not specifically indicate whether donning and doffing constitutes "work." (R. 35, Resp. to Mot. to Remand, Exs. A § 8.5, B § 7.6.) Specifically, the meaning of "work" under the CBA implicates federal contract interpretation, and therefore section 301. *See, e.g., Carter*, 2009 WL 4790761, at *7. Second, if the CBAs are interpreted to include donning and doffing, the Court must decipher the compensation and overtime provisions to arrive at the total amount Plaintiffs deserve. The CBAs offer different payment rates

9

depending on seniority. (R. 35, Resp. to Mot. to Remand, Exs. A § 7.2, B § 28.8.) Premium rates are also available for certain tasks. (R. 35, Resp. to Mot. to Remand, Exs. A § 7.3, B § 28.5.) If donning and doffing is determined to fall under the CBAs, calculation of the unpaid wages would require a factual, unique analysis for each plaintiff. *See Atchley*, 101 F.3d at 500 (timing of payment of wage increases and whether employees were paid properly required interpretation of CBA); *see, e.g., Carletto*, 2006 WL 2018250, at *6 (interpreting CBA to determine the amount of wages due).

Plaintiffs only allege violation of two state laws – the IMWL and IWPCA – in their complaint, and therefore claim that "[t]o determine plaintiffs' 'hours worked' for purposes of their Illinois claim requires solely applying the facts of each plaintiffs' situation to the definition set out in Illinois law." (R. 33, Pl. Renewed Mot. for Remand.) Preemption is not denied simply because the complaint itself contained no explicit reference to the CBAs. *See, e.g., Carter*, 2009 WL 4790761, at 4-5 (CBA integral part of court's motion to dismiss analysis even though it was not referred to in the complaint). Even if a state statute creates a remedy for workers to obtain unpaid wages, if that claim involves interpretation of the CBA, as it does here, "such a remedy would be pre-empted by § 301." *Atchley*, 101 F.3d 495. Further, the terms of the CBA provide more generous compensation options than the IMWL and IWPCA. *See Carletto*, 2006 WL 2018250, at *6 (worker can earn overtime without working forty hours a week); *Anderson*, 2009 WL 3713130, at *4 ("Just as in *Gonzalez*, this right to overtime pay of more than time-and-one-half on Sundays is a specific right created by the CBA and not granted by state or federal law. Interpretation of the CBA is necessary to determine whether overtime pay was properly recorded and paid pursuant to the CBA's overtime provisions.") Here, one of the CBAs provides for overtime pay double the regular rate on Sundays, while Illinois law just sets a minimum standard of time-and-a-half for overtime. (R. 35,

Resp. to Mot. to Remand, Ex. A § 8.4.) Likewise, while the IMWL mandates that employees working more than 40 hours a week must receive overtime compensation, both CBAs entitle employees to overtime compensation for "[a]ll work performed in excess of eight (8) hours at straight time in *one day*." (R. 35, Resp. to Mot. to Remand, Ex. A § 8.2, Ex. B § 7.2.) The CBAs create Plaintiffs' right to overtime compensation and the Court must interpret the CBAs to resolve this case. As such, LMRA section 301 preempts Plaintiffs' IMWL and IWPCA claims.

## CONCLUSION AND ORDER

For these reasons, Plaintiffs' Motion to Remand is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: January 12, 2012